Case number 19-7160. Alexander Khochinsky, appellant, versus Republic of Poland, a foreign state. Mr. O'Donnell for the appellant, Ms. Moore for the appellee. Good morning, Mr. O'Donnell. Mr. O'Donnell, proceed whenever you're ready. Good morning, Your Honor, and may it please the court. I am Nicholas O'Donnell on behalf of appellant Alexander Khochinsky. Sovereign immunity is an issue that the courts have called comedy and respect among the nations, and the Foreign Sovereign Immunities Act, of course, codifies that framework. But underlying that policy, and underlying the exceptions in the FSAA, are those ideas of grace and respect. This case presents to the court a question of first impression in this circuit, namely, what happens when the foreign sovereign flouts that idea of respect? Because, make no mistake, respectfully, the disrespect among nations at issue in this case is Poland's bad faith persecution of Alexander Khochinsky in the United States. What then do we make of the first two exceptions that we've invoked in this case, the implied waiver and the counterclaim exception? First, as the District Court noted, we are dealing with facts that are not in dispute. In moving to dismiss, Poland did not Mr. Kochinsky did not go to Poland and commit some crime. Mr. Kochinsky raised the prospect of restitution of his family's Holocaust lost or looted property, and in Poland that's not allowed. In Poland, asking about Jewish property restitution is antithetical to the policy of the government right now. And so what happens to him? Poland initiates an extradition request which results in his arrest in New York City and his imprisonment and the attempt at his extradition, which Judge Rakoff in the Southern District, thankfully, rejected as without evidence. So that puts to the court the question of what are we to make of this? And I think it's important to look right at Blaxland, the case from the Ninth Circuit on which Poland relies and on which the District Court relies, because I think there's no getting around it. It presents this court with a fork in the road. As the District Court noted, this court has been reluctant to find an implied waiver and and all the good. But what do we do when a sovereign erects a purely pretextual and discriminatory prosecution against a person whom they seek to deport from the diplomatic process, right? It involves the Department of State, the Department of Justice. It doesn't involve the Republic of Poland going to court itself. Your Honor, that's how it begins. That's how it begins and I think it's a critical point because even in Blaxland, Blaxland suggested that unless the foreign sovereign is engaged in the U.S. courts that these exceptions don't apply. But the extradition doesn't, you know, as we say, spring forth like Athena from the head of Zeus. The extradition happens because the foreign state goes to the State Department and what should happen then, what should have happened here, is someone in the State Department says, this is absurd, of course not, but that didn't happen here. And unless the State Department and the Justice Department go to court, nothing happens because the State Department, you know, doesn't pick up people off the streets. They have to go through the judicial process and it only ends with the extradition of a person. Perspective of the Republic of Poland, that process is a process that's internal to the United States, right? To satisfy due process requirements and other requirements, right, our State Department, Department of Justice seek a certificate of extraditability. That's a process that's internal to the United States, right? It's not something that the Republic of Poland invoked itself. They're just seeking extradition. They didn't go to court themselves. They did not go to court themselves, Your Honor, that is right, but it is the first link in a chain without which there can be no extradition. I think the perspective that the district court took, the perspective that Blaxland takes, loses the forest for the trees. And in this case, not coincidentally, there is some back and forth. Judge Rakoff poses some questions to the Justice Department. The Justice Department gets the answers as a pure pass-through, as a pure pass-through. The way Blaxland suggests, they pass the question to Poland, Poland provides the answer. That's participating. And again, I can't do this, you know, a foreign corporation can't do this. The only ones who can do this is a foreign state. The only ones who can invoke the extradition treaty is the foreign state. But once they do, once they do, and again, on the facts here, for purely illegitimate and you know, as I thought about this, this argument, I thought, of course, I this treatment of Mr. Kuczynski profoundly unfair, but, but take an even more extreme example, right? Imagine the United States has extradition treaties with almost every country in the world except Iran, Syria, North Korea, I think maybe Cuba, right? Imagine the Taliban reassume control of Afghanistan, and the but purely for religious discrimination against Jews, against Christians, whomever. Okay, and, and as here, nobody at the State Department stops this before it gets to court. That's, that will be okay, under the perspective that Blaxland and the district court compel. That's the question. If we, if we reach the conclusion you do, would that mean that anytime the US makes an extradition request abroad, that it ought to be to have been deemed to have waived a sovereign immunity and subject to suit? No, no, Your Honor, and I think that's an important point, because first of all, nearly every extradition request, it's important to remember, will result in extradition, right? The, the, the, the conclusion here in the district court is extraordinary in the, in the usual sense of the word. The, the district court judge looked at this and said, no, this doesn't add up. Even then, even if the same standard were applied to the United States, even then, if the United States were faced with a claim like ours, or as Poland was here, they can contest the, my allegation that there's nothing to this, my allegation that this was a pure invention. And at that point, then I have to prove what I'm saying at the threshold stage, right? So this is an enormous guardrail against, against that concern. And then even then, of course, like I said, there has to be some, the discriminatory and arbitrary nature of it has to be, has to be plain on its face. Right, but you would have waived, but there would have been a waiver of sovereign immunity. It's true that the extradition can be stopped as it was here, but by, by dint of asking for the extradition there, it opens the door to waiving sovereign immunity for anything that arises out of the extradition, any claim that arises out of the extradition. Request. The request, Your Honor, what I'm saying is, the problem is, of course, I'm putting the cart before the horse in some sense, but, but the claim has to exist. What is the claim? The claim here is that the prosecution abroad was for discriminatory reasons. So yes, what I'm saying is once Poland sets into motion that prosecution requesting the extradition waives the sovereign immunity, yes, but that's happened in Sitterman. And I think it's important to look at Sitterman and Blaxland in connection. And, and I suggest respectfully to the ninth circuit, that's that Blaxland and the district court in our case relied on a distinction that is really without a difference that once the foreign state reaches into our judicial processes, and it may be by filing a paper, it may be by filing an appearance. It may be by sending a letter rogatory. It may be by initiating an extradition process that it knows will lead to a certain conclusion that it's done so. And that's what the implied waiver is about. That's what the counterclaim exception is about. The counterclaim is about the phrases brings or intervenes in an action. And as the, as the Lord Day case held, even that language, that plain language, we're just looking at the statute, not the legislative history, that applied to an interpleader action. The statute doesn't say interpleader, and you could take an extremely narrow view and say, well, if it doesn't, is an intervention to rule 19 or filing of a complaint, initially, it doesn't count as brought or intervenes. But Lord Day expanded that perspective and we think appropriately. So with that, I'll reserve the balance of my time unless there are any other questions. Thank you. We'll hear from Ms. Moore and then we'll give you your rebuttal time. Thank you. Ms. Moore. Thank you, your honors. And may it please the court, Desiree Moore on behalf of the Republic of Poland, the district court's order, granting the Republic of Poland motion to dismiss should be affirmed. The Republic of Poland is presumptively immune and is in fact immune from the jurisdiction of this court. And no exception applies in the present matter that would withdraw this immunity. More specifically, the entirety of Mr. Kuczynski's claims center on an extradition proceeding that occurred in 2015, the extradition irrespective of how it is characterized or cast does not give rise to any exception to the immunity that Poland is otherwise afforded, including under the implied waiver exception or the counterclaim exception that Mr. O'Donnell mentioned today. I'd like to pick up where Mr. O'Donnell left off if I could momentarily. Mr. O'Donnell encourages a dangerous precedent and Chief Judge Srinivasan to pick up on your question. The answer is yes, and Mr. O'Donnell concedes this. The United States would be subject to lawsuits around the world anytime it initiated extradition pursuant to a treaty among nations. That is counter to the concepts of comity and respect among nations that Mr. O'Donnell started off with, and in fact would create chaos and would discourage what the extradition treaties are intended to allow, which is this disrespect. Ms. Moore, what about the argument that by seeking extradition, the Republic of Poland knew that there would be a judicial process in order to complete its extradition, right? Although of course it went through diplomatic channels in order to actually extradite Mr. Kaczynski, there would have to be some judicial process. What about that argument? Sure, sure. What Mr. Kaczynski is complaining about in essence is the process itself. So the extradition statute contemplates that once the State Department passes the kind of preliminary evidence to a magistrate or other district court, there is a judicial component. And Poland, in accordance with the extradition process, provided evidence. Absent that evidence, you would never successfully extradite anyone. So it's not improper on its face to adhere to what the statute contemplates. And there is a judicial component. And Poland's knowledge of that judicial component does not bear on whether the extradition process is proper or whether, more importantly, the Republic of Poland is acquiesced in the jurisdiction of the United States. Why isn't there an implied waiver by invoking this process? So courts have universally found that the implied waiver exception is narrow. It is narrowly construed and absent strong evidence that the foreign sovereign intended to waive immunity. Courts will generally not find that there is a waiver. The legislative history talks about an potential indication of waiver where the foreign sovereign has agreed to a particular choice of law or where the foreign sovereign has entered a responsive pleading without raising jurisdiction. And while the legislative history indicates that that might not be the entire universe, there is a commonality there. The foreign sovereign has to demonstrate an intention to waive in order for that implied waiver exception to come into play. And here, there was no such action taken on the part of the Republic of Poland. In extradition, I just have a background question about how it actually works in practice. If a foreign country asks for extradition and then the executive, that goes to the executive here, and then the executive makes an assessment of what to do. Does the executive typically exercise discretion in determining whether to pass on the extradition request? In other words, it's engaging in its own inquiry, and then it makes a determination of whether to accede to the foreign government's request for extradition? Yes, Your Honor, I believe that's correct. The State Department makes a preliminary determination before then passing the inquiry to a magistrate or a United States District Court judge for essentially an evidentiary analysis of the evidence that was put forward. So in terms of the nexus between the foreign country's request and the judicial proceeding that ultimately ensues, it's not that the foreign government is necessarily saying, I'm subjecting myself to a judicial proceeding. What it's saying is, I'd like your help. You put yourself in a judicial proceeding. At my request, definitely, I'm triggering it. But at my request, I'm asking you to subject yourself to a judicial proceeding that then will pass on the request that I've made to you. That's correct, Your Honor. And on the face of the caption in this particular extradition hearing, the 2015 extradition that Mr. Kuczynski's entire complaint is based upon, the caption itself is the United States versus Mr. Kuczynski, and an AUSA shepherds that proceeding. So that's correct, Your Honor. I think there are certain things that have to be examined by the executive, such as whether the dual criminality standard has been met, and whether there's an adequate foundation in the evidence. Correct, Your Honor. And I think that that's further to the point. There is some level of executive discretion or executive analysis before it is transitioned to a judicial process. I also find that there are also instances in which the executive has to, when we're requesting, when the United States is requesting extradition, sometimes the foreign state will, depending on their laws, condition extradition on an assurance that there'll be no capital punishment or charge. It's a negotiation in that respect. It's a negotiation between nations. That's correct, Your Honor, and is exemplified by the fact that it remains in the executive. It is a function of the executive branch. Your Honor, I'm sorry. Naomi, please. I just had a question about willfulness with respect to the default here. I mean, some of the claims of Mr. Kuczynski really are about what the government of Poland is doing here, right? And so I guess I'm wondering if you can maybe share with us, you know, why the Republic of Poland is pursuing Mr. Kuczynski for a painting of relatively limited value, and whether that pursuit does suggest bad faith or willfulness with regard to the default. So as it concerns the default under Rule 55, for good cause shown, the district court will reverse the default, or vacate the order of default, or the entry of default, rather. And the willfulness component goes to whether the Republic of Poland, you know, willfully did not appear, or whether there was, you know, some underlying event that can be pointed to that would suggest otherwise. Here, there was confusion as it the, you know, extradition or any of the kind of events that occurred in the aftermath bear on this. Mr. Kuczynski failed to effect service. Mr. Kuczynski emailed the Portuguese Central Authority instead of the Polish Central Authority at the outset. There were a number of confusing events that occurred. And once Mr. Kuczynski did, in fact, proceed according to correct process, certificate of service was, or service rather, was accomplished thereafter relatively quickly. So there is no willfulness that Mr. Kuczynski points to, and certainly the court did not abuse its discretion in finding that there was no willfulness, or rather that there was good cause shown to vacate the entry of default. Now, Ms. Mori, if we disagreed with you on that, and remanded the matter, well, I think that would result in remanding the matter, what would that, what would happen then? In a sense, we would be back where we started, because without jurisdiction, the court cannot hear this case. And so that goes to the element of plaintiff's prejudice, even whether the case is remanded and whether we sort of start over because of that lack of, or because of a willfulness determination, let's say. In any event, we were right where we started. Absent jurisdiction, a court cannot hear this case. Here, the district court- Has the plaintiff alleged any prejudice? The plaintiff has not alleged any prejudice as contemplated under Rule 55. And where the court lacks jurisdiction, the plaintiff cannot be prejudiced in any event. And so, you know, there really is no prejudice here. Absent jurisdiction, the court cannot hear this case. I have one question on- And the district court correctly found. I have just one question on an exception that we haven't talked about yet, which is the non-commercial tort exception. So just out of curiosity, I know that the action in the district court and in the briefing here has been on 1605A5B, and whether the claim involves abuse of process. I'm just wondering if there was any consideration given in the district court, before the district court, about the applicability of the discretionary function prong, which is 1605A5A as opposed to 1605A5B. Did that ever come up? And if not, why not? Maybe there's an obvious answer. Your Honor, that did not come up. And the answer there may well be, and we would submit that the more pertinent exemption or exception to the exception, particularly where Mr. Kuczynski has pointed to abusive process as count five of his complaint. And the additional causes of action that he suggests are covered by the non-commercial tort exception, First Amendment retaliation, and tortious interference, arise out of abusive process and are also barred. But that may well be right. I'm not suggesting that it's not right. I'm not suggesting one way or the other. But is there an obvious reason that the initiation of the extradition request was not a discretionary function? I'm not sure, Your Honor. I'm not sure I understand the question in terms of whether there's an obvious reason. I think here, I'm not sure why the district court didn't go there, and we didn't raise it in our briefing because A5B felt like the more obvious and pertinent exception. Apologies if I'm misunderstanding the question. No, no. I was just wondering if either of them would work for your purposes, A5A or A5B. And I was just wondering whether there was an obvious reason why A5A was not a home where your argument could have been made. But it's not something central to the case, I understand, because it was not a home. It was a home. It was a home. But I'm not sure if it's a home that's a home. I'm not sure if it's a home that's a home that's a home that's a home that's a home. Okay. Thank you, Your Honor. Unless my colleagues have further questions, I think we'll, we'll give Mr. O'Donnell his rebuttal time. Thank you, Your Honor. Thank you, Ms. Moore. O'Donnell, please. Thank you. To cover a few things that came up in responsive argument, I think now has conceded that there is judicial process. A lot of their argument rests on the idea that there was none. And that's really all we're talking about on the threshold matter, certainly of the counterclaim exception. With regard to Poland's response to the complaint, service in October of 2018 was proper. Poland conceded this. The sole email by my service provider as a follow-up to a Portuguese diplomat delayed the matter by two weeks before he was released. There can really be no doubt. And again, on the allegations of the complaint, what they then did was arrest my client in France. And that leads to my final point, which is just the relevance of the European judicial decisions is Poland has been cast out of the European community as a, as a country that respects the rule of law. And they are using this process there. Other courts have recognized it. We respectfully ask this court to take note of those decisions as well. Mr. O'Donnell, if they, if they, if they disagreed with the district court as to the vacating the default judgment, what good does that do you? The def, the default, your honor, we, we would there are two questions. Of course, the question is should default judgment had entered, we moved for it. The court turned us down. So the court could, could overturn the district courts vacating the default and remand with instructions, different instructions about entering default judgment, or the court could affirm the denial of default judgment and remand the case to begin and compel a responsive plea from Poland at the very least. Aren't you, aren't you isn't that a bootless matter if you don't have a claim of prejudice? If we don't have a claim of prejudice, your honor, that is a component of it. Yes. And I submit part of the prejudice is we were entitled to the judgment and in a collateral action is what happened in France. And rather than focus on this case, what's the claim? Ordinarily a claim of prejudice in a context like this means that something changed in the, during the period that the judgment was in force or in this case, the default and you know, some, some development, some problem with evidence or witnesses, nothing like that. No, no, that's right. All right. Thank you. Thank you. Thank you. We'll take the case under submission.
judges: Srinivasan, Rao, Ginsburg